UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| **MATANUSKA-SUSITNA BOROUGH SCHOOL DISTRICT,** | ) | |
| **Plaintiff,** | ) | **3:09-cv-0073 JWS** |
| **vs.** | ) | **ORDER AND OPINION** |
| **D.Y., the parent of B.Y., a student with a disability,** | ) | **[Re: Motion at Docket 13]** |
| **Defendant.** | ) | |

## I. MOTION PRESENTED

At docket 13, plaintiff Matanuska-Susitna Borough School District (the "District") moves for summary judgment, reversing in part the March 13, 2009 decision of Hearing Officer Andrew Lebo. At docket 21, plaintiff D.Y., the parent of B.Y., a student with a disability, opposes the motion. The District replies at docket 22. Oral argument was not requested, and it would not assist the court.

## II. BACKGROUND

D.Y. is the parent of B.Y., a thirteen-year-old boy with autism who is eligible for special education and related services from the District under the Individuals with Disabilities Education Act ("IDEA"). In February 2008, D.Y. filed a complaint and requested a State of Alaska Department of Education and Early Development ("DEED") due process hearing.[1] D.Y. filed an amended due process complaint on April 15, 2008.

[1]DEED Case No. 08-16.

Hearing Officer Lebo conducted a due process hearing over the course of 15 days between September and December 2008. On February 2, 2009, Hearing Officer Lebo issued a summary decision and requested the parties to submit supplemental briefing on the compensatory education remedy that should be awarded to D.Y.

On March 13, 2009, Hearing Officer Lebo issued a final 68-page decision, finding for D.Y. on the majority of her claims. The hearing officer concluded in part that the District failed to: educate B.Y. in the "least restrictive environment" ("LRE"), include a regular classroom teacher in placement determinations, attempt greater inclusion of B.Y. in regular education settings, provide B.Y. with supplemental aides and services to enable him to be educated in the LRE, implement an adequate behavioral intervention plan, provide a free and appropriate public education ("FAPE") as to the social elements of B.Y.'s education, develop individualized education plans ("IEPs") with measurable goals and objectives, and provide B.Y. with a voice output device called a Dynavox as required in B.Y.'s 2007 IEP. Hearing Officer Lebo further determined that a compensatory education award of $50,000 was appropriate to put B.Y. in the place he would have been absent the District's LRE and Dynavox violations.

On April 13, 2009, the District filed a complaint seeking review of the hearing officer's final decision pursuant to 20 U.S.C. § 1415(i)(2)(A). The District now moves for summary judgment reversing in part Hearing Officer Lebo's final decision.

## III. STANDARD OF REVIEW

"A party aggrieved by the findings and decision of [a hearing officer] in a due process hearing may seek review through a civil action in United States district court."[2] The IDEA provides that in reviewing a due process hearing, the district court shall: (1) receive the records of the administrative proceedings; (2) hear additional evidence at the request of a party; and (3) basing its decision on the preponderance of the evidence, grant such relief as the court determines appropriate.[3] "In reviewing administrative decisions, the district court must give 'due weight' to the state's

---

[2]*L.M. v. Capistrano Unified School Dist.*, 556 F.3d 900, 908 (9th Cir. 2009).

[3]*Id.* (citing 20 U.S.C. § 1415(i)(2)(C)).

judgments of education policy."[4] Recognizing the administrative agency's expertise, the court "must consider [the agency's] findings carefully and endeavor to respond to the hearing officer's resolution of each material issue."[5] Although the court may determine independently how much weight to give administrative findings, the court may not simply ignore them.[6] The court gives particular deference to "thorough and careful" administrative findings. A hearing officer's findings are "thorough and careful" when the hearing officer "participates in the questioning of witnesses and writes a decision contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions'"[7] The hearing officer's 68-page final decision meets that standard.

## IV. DISCUSSION

The IDEA's primary goal is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services."[8] To that end, "IDEA requires school districts to develop an [individualized education program] for each child with a disability, with parents playing 'a significant role' in this process."[9] The IDEA provides federal funds to assist state and local agencies in educating children with disabilities, but conditions such funding on procedural and substantive compliance with the IDEA.[10]

---

[4] *Id.*

[5] *Id.* (quoting *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996).

[6] *Id.*

[7] *R.B., ex rel. F.B. v. Napa Valley Unified School Dist.*, 496 F.3d 932, 942 (9th Cir. 2007) (internal quotation and citation omitted).

[8] *J.L. v. Mercer Island School Dist.*, 2010 WL 103678, 7 (9th Cir. 2010) (quoting 20 U.S.C. § 1400(d)(1)(A)).

[9] *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007) (internal citations omitted).

[10] *Mercer Island School Dist.*, 2010 WL 103678 at 7 (quoting *Ojai Unified School Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993)).

The District's motion requests the court to enter judgment in its favor, reversing Hearing Officer Lebo's March 13, 2009 decision to the extent that the decision: 1) failed to impose an appropriate time limitation on D.Y.'s claims; 2) awarded damages against the District for a claim that had been resolved in a mediation agreement; 3) designated specific personnel that the District must employ to provide services; and, 4) "awarded compensatory educational services through a calculation of the monetary value of those services that was not based on competent evidence and/or was based on evidence not contained in the record."[11] The court considers each issue below.

**A. Statute of Limitations**

The District first argues that the hearing officer erred by allowing D.Y. to recover for claims over a 34-month period. The IDEA requires local educational agencies to provide parents with a notice of procedural safeguards ("NOPS") which provides a full explanation of all procedures regarding the opportunity to present and resolve complaints, including "the time period in which to make a complaint."[12] The IDEA allows a party to present a complaint "which sets forth an alleged violation that occurred not more than 2 years before the date the parent or the public agency knew or should have known about the alleged action that forms the basis of the complaint, or if the State has an explicit time limitation for presenting such a complaint. . .in such time as the State law allows."[13] The IDEA further provides that the above time lines do not apply to a parent if the parent was prevented from requesting a due process hearing due to the "local agency's withholding of information from the parent that was required under this subchapter to be provided to the parent."[14] Under Alaska law, a parent must request a due process hearing "not later than 12 months after the date that the school district

---

[11]Doc. 16 at pp.1-2.

[12]20 U.S.C. § 1415(d)(2)(E)(i).

[13]20 U.S.C. § 1415(b)(6)(B).

[14]20 U.S.C. § 1415(f)(3)(D).

provides the parent with written notice of the decision with which the parent disagrees."[15]

Before the commencement of the due process hearing, D.Y. filed a motion seeking a ruling that no statute of limitations should be applied in this case because the NOPS provided by the District contained misleading and inaccurate information concerning the applicable statute of limitations and thus the statutory time lines should not apply to her claims. The District opposed the motion, arguing that the one-year statute of limitations under Alaska law should apply.

After three days of hearing, Hearing Officer Lebo "issued a ruling to the effect that the statute of limitations period would be extended beyond the one-year period allowed under Alaska law, allowing Parent to bring claims covering the period July 1, 2005 through April 21, 2008."[16] The hearing officer found that the District failed to disclose to D.Y. the limitations period applicable to her claims until after she initiated the due process hearing. The record shows that prior to 2006, the NOPS provided by the District contained no information regarding the limitations period, and that from 2006 to 2008 the NOPS contained misleading language regarding the limitations period. In its briefing on the issue, the District conceded that the NOPS "appears to provide a three year exception not permitted by law."[17] Based on the evidence, Hearing Officer Lebo concluded that D.Y. qualified for an exception to the applicable statute of limitations under 20 U.S.C. § 1415(f)(3)(D) because the District withheld information concerning the applicable statute of limitations that it was required to provide under the IDEA. However, the hearing officer agreed with the District's argument that the limitations period should not be extended further back than July 2005, when the IDEA requirement that districts disclose the limitations period went into effect.

Based on the unique facts of this case, the hearing officer reached an equitable conclusion that the statute of limitations period should be extended beyond the one-year

---

[15] AS § 14.30.193(a).

[16] AR 741.

[17] AR 593.

period allowed under Alaska law to allow D.Y. to bring claims covering the period July 1, 2005 through April 21, 2008.[18] Because the hearing officer's decision is supported by the preponderance of the evidence, the court finds no error in the hearing officer's determination concerning the applicable time period and will affirm it.

**B. Damages for Mediated Claim**

The District next argues that Hearing Officer Lebo erred by making a compensatory education award against the District for a claim for the 2005-2006 school year and 2005 extended school year ("ESY") that had been resolved in a mediation agreement. The District's argument is unavailing because the mediation agreement for 2005-2006 and the hearing officer's compensatory education award addressed different injuries.

In his March 2009 decision, Hearing Officer Lebo made a compensatory education award for the District's failure to meet its LRE obligations to B.Y. during the period from July 1, 2005 to April 21, 2008, and failure to provide B.Y. with the Dynavox in a timely fashion. After considering all the evidence and the parties' supplemental briefing regarding compensatory education, the hearing officer found that a compensatory education award of $50,000 in services would put B.Y. in the place he would have been absent the District's LRE and Dynavox violations.[19] The award is equivalent to approximately 300 hours of speech therapist services plus approximately 208 hours of aide services, although the compensatory education award may be used for other direct services to B.Y., evaluations, assessments, training, and assistive technology.

The mediation agreement, on the other hand, was focused on developing a behavioral intervention plan and implementation of a Picture Exchange Communication System (PECS). The record indicates that D.Y. and the District participated in a mediation regarding B.Y.'s educational program in May and June of 2005. The mediation resulted in the development of a draft behavioral intervention plan and a plan

---

[18] AR 741.

[19] AR 802.

to involve consultants in B.Y.'s program "to assist the team both with implementation of [Picture Exchange Communication System ("PECS")] and with Student's behavioral issues."[20] D.Y. declined to enroll B.Y. for extended school year ("ESY") services for the summer of 2005 because of "her understanding that the District did not have staff who were trained in the PECS system who would be available to work with [B.Y.]"[21] Pursuant to the mediation agreement, a consultant came to B.Y.'s school twice during the 2005-2006 school year, once to check B.Y.'s progress with PECS and once to work with B.Y.'s team regarding B.Y.'s aggressive behaviors.[22]

The compensatory education award in the hearing officer's decision was intended primarily to compensate for the District's LRE violations. Whereas, the mediation agreement was focused primarily on development of a behavioral intervention plan and the use of PECS for the 2005 - 2006 school year. Accordingly, the hearing officer did not err by making a compensatory education award to compensate B.Y. for the District's failure to meet its LRE obligations for the 2005-2006 school year.

**C. Service Provider Designation**

In his order, Hearing Officer Lebo required the District in pertinent part to:

> Contract with Dr. Carol Quirk, the inclusion expert who has already observed Student and staff at school, to perform the necessary systematic analysis and planning in conjunction with the IEP team and any behavioral consultants that may already be involved in Student's program, to ensure that Student is educated in the LRE, while protecting staff and other students from any potential harm associated with Student's aggressive or inappropriate behaviors.[23]

The District argues that while the hearing officer could require the District to employ the services of an inclusion expert to remedy the District's LRE violations, the hearing officer exceeded his authority by ordering the District to contract with a particular individual to provide such services. In support of its argument, the District cites cases

---

[20]AR 747.

[21]AR 747.

[22]AR 751.

[23]AR 796-97.

which stand for the proposition that parents may not require particular service providers, but does not cite any controlling authority for the proposition that a hearing officer does not have the authority to require a district to retain a particular expert to provide services. Controlling case law suggests that hearing officers have the authority to require a local education agency to place a child at a particular school and to include a particular teacher on an IEP team.[24] Such cases would suggest that in fashioning an appropriate remedy, a hearing officer would also have the authority to require a district to retain the services of an inclusion expert who has observed the student and staff and whose testimony the hearing officer found credible at the due process hearing.

Moreover, the court gives particular deference to "thorough and careful" administrative findings. Here, the hearing officer's thorough factual findings and analysis support his requirement that the District involve Dr. Quirk in inclusion planning and on the IEP team to ensure that B.Y. is educated in the LRE. In his decision, Hearing Officer Lebo thoroughly discusses the District's failure to address inclusion planning for B.Y., stating in part:

> I do not wish to trivialize the District's heath and safety concerns arising from Student's aggressive behaviors and related difficulties. However, notwithstanding those concerns, the District failed to attempt to meet its LRE obligations in a systematic or well-considered manner. There was no evidence of any serious attempt by the District to determine how Student could be included with other children to a greater degree. On the contrary, the evidence showed that the question of increasing Student's inclusion with regular ed peers was given short shrift in his IEPs and was not seriously addressed through the IEP process. In fact, the level of his exposure to regular ed peers was significantly reduced during the 34 months at issue here. And more importantly, when decisions were made to reduce Student's inclusion with regular ed peers, particularly in the fall of 2007, those decisions were made without the participation of the IEP team.[25]

The hearing officer's decision further discusses Dr. Quirk's detailed testimony about how inclusion of B.Y. and his educational program can be accomplished in the

---

[24]*See, e.g., Seattle School District, No. 1 v. B.S.,* 82 F.3d 1493, 1503 (9th Cir. 1996); *Ojai Unified School District v. Jackson*, 4 F.3d 1467, 1477-78 (9th Cir. 1993); *M.L. v. Federal Way School District*, 394 F.3d 634, 649-650 (9th Cir. 2005).

[25]AR 781.

regular ed classroom, taking into account B.Y.'s allegedly intensified aggressive behaviors. Hearing Officer Lebo found Dr. Quirk's testimony on the question of increasing B.Y.'s inclusion to be credible and persuasive.[26] Based on the hearing officer's thorough and careful findings and the District's failure to cite any authority in support of their argument, the court will affirm the hearing officer's requirement that the District retain the services of inclusion expert Dr. Quirk.

**D. Compensatory Educational Services**

Finally, the District argues that Hearing Officer Lebo erred in calculating the compensatory education award because the amount of the award is either without a factual basis or is based on evidence not contained in the record. "Under IDEA, the district court has the power to grant appropriate relief in equity."[27] "[C]ompensatory education is not a contractual remedy, but an equitable remedy, part of the court's resources in crafting 'appropriate relief.'"[28] "[E]quitable considerations are relevant in fashioning relief," including the parties' conduct.[29]

Prior to issuing a final decision, the hearing officer requested supplemental briefing from the parties concerning what a compensatory award should consist of and how much should be awarded. D.Y. proposed an "hour for hour" compensatory education remedy, for 180 days of instruction for each year covered by the hearing for 6.5 hours per day, less 13 days previously awarded for suspensions in January 2008, for a total of 3,217.50 hours of service. D.Y. further argued that the compensatory education award should consist of a compensatory education fund which she could access for "any reasonable services" for B.Y. D.Y. further proposed a range of costs of $60 to $125 per hour for various services. The District suggested a compensatory

---

[26]AR 779.

[27]*J.G. v. Douglas County School Dist.*, 552 F.3d 786, 794 (9th Cir. 2008).

[28]*Parents of Student W. v. Puyallup School Dist. No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994).

[29]*Id.* at 1496-97 (internal quotation and citation omitted).

education award of 88.8 hours of services targeted at socialization and/or inclusion opportunities. The District did not set forth any estimated costs for those services.

In fashioning the compensatory education award, the hearing officer found that although the District acted in good faith in providing services to B.Y and in attempting to implement behavior plans, the District's LRE violations were significant. The hearing officer further found that D.Y.'s behavior throughout the 34-month period covered by the hearing could not be faulted and that D.Y. had been an active advocate on behalf of B.Y. and had worked with the IEP team and District in a cooperative and collaborative fashion.

Having considered the parties' conduct and the evidence supporting their proposed compensatory education awards, Hearing Officer Lebo found that a compensatory education award of $50,000 in services was appropriate to put B.Y. "in the place he would have been in absent the District's LRE and Dynavox violations." The hearing officer stated,

> This award is equivalent to approximately 300 hours of speech therapist services plus roughly 208 hours of aide services, at the $125 and $60 per hour rates cited by Parent, or 2.7 hours of speech services and 1.9 hours of aide services per week for 3 school years. I find that this level of services is reasonably calculated to assist [B.Y.] in remedying the deficits caused by the District's LRE violations and the violation concerning provision of the Dynavox.[30]

Hearing Officer Lebo further ordered that the compensatory education award shall be in the form of a "comp ed fund," on which D.Y. and the IEP can draw to procure direct services to B.Y., evaluations, assessments, training, and assistive technology.[31]

The District argues that the compensatory education award of $50,000 is "baseless" because it is based solely on the hourly rates for services proposed in D.Y.'s supplemental briefing. Having chosen not to include proposed costs for a compensatory education award in its supplemental briefing, the District cannot now complain that the hearing officer's computation is baseless. The District's argument that

---

[30]AR 802.

[31]AR 802-803.

the compensatory education award should be limited to claims arising after February 2007 is similarly unavailing in light of the court's ruling herein.

In fashioning the above compensatory education award, the hearing officer properly considered the parties' conduct and other equitable considerations. The court finds that the preponderance of evidence supports the hearing officer's determination that a compensatory education award in the amount of $50,000 to be used for direct services for B.Y. is appropriate to remedy the deficits caused by the District's LRE and Dynavox violations.

## V. CONCLUSION

For the reasons set out above, plaintiff's motion at docket 13 for summary judgment is **DENIED**, and the hearing officer's decision is **AFFIRMED** with respect to all issues raised in the motion.

DATED at Anchorage, Alaska, this 23rd day of February 2010.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE